**SO ORDERED.**

**SIGNED this 06 day of July, 2009.**



_____
**ROBERT E. NUGENT**
**UNITED STATES CHIEF BANKRUPTCY JUDGE**
_____

OPINION DESIGNATED FOR ON - LINE PUBLICATION
BUT NOT PRINT PUBLICATION

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

IN RE:

LULA WASHINGTON,

        Debtor

No. 08-11885
Chapter 7

J. MICHAEL MORRIS, Trustee

        Plaintiff,

v.

LULA WASHINGTON,

        Defendant.

Adv. No. 08-5239

## MEMORANDUM OPINION

This matter came on for trial on March 17, 2009. The Trustee seeks to except from debtor's discharge a judgment he obtained in her previous bankruptcy case requiring her to turnover certain

-1-

tax funds and revoking her discharge.[1] The Trustee appeared by Sarah J. Newell. Ms. Washington appeared *pro se.* At the close of trial, this Court announced that judgment should be entered on the Trustee's complaint against Ms. Washington under 11 U.S.C. § 523(a)(4) and directed Trustee's counsel to submit an appropriate order. Upon further reflection, the Court requested the parties to brief a legal issue under § 523(a)(4) and it now concludes that the findings and conclusions made on the record should be and are hereby withdrawn.[2] Having reviewed the evidentiary record and the Trustee's written submission, the Court makes the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

<u>Jurisdiction</u>

This is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(I) and § 1334.

<u>Factual Background</u>

Ms. Washington filed a bankruptcy case in this District on September 29, 2004, Case No. 04-15466. Mr. Morris was appointed trustee in this previous chapter 7. In early 2005, she secured a tax refund for the year 2004. After missing and rescheduling several times, Ms. Washington appeared for a § 341 meeting of creditors on January 31, 2005. At that time, the Trustee instructed her to supply him with copies of her 2004 tax returns when they were filed and, further, not to cash or spend any refunds she might receive. At the March 2009 trial, Ms. Washington testified that she had received her refunds by the time of the January 2005 § 341 meeting and spent the money. When

---

[1] The trustee proceeds under 11 U.S.C. § 523(a)(4), (a)(6), and (a)(10).

[2] Dkt. 16. The Trustee submitted his legal memorandum on April 13, 2009. Dkt. 20. Mrs. Washington made no submission.

-2-

the Trustee instructed her not to spend the tax refunds, she did not inform him that the money was already gone. In response to this Court's questions, Ms. Washington said she was "scared" to tell the Trustee she had already spent the money.

The docket sheet in the 2004 case reflects that the Trustee sought information about the 2004 taxes and obtained an order compelling the debtor to provide copies of the 2004 returns on June 16, 2005.[3] This order was apparently not obeyed. After securing the tax transcripts from the IRS and the Kansas Department of Revenue on his own, the Trustee, on September 12, 2005, filed motions for turnover of the estate's share of the 2004 federal and state tax refunds. The Court granted these motions on October 7, 2005.[4] After Ms. Washington failed to comply with that order, the Trustee filed adversary proceeding No. 05-5855 seeking a judgment for the unaccounted-for funds as well as to revoke her discharge. In his 2005 adversary complaint, the Trustee sought the following relief:

> The trustee requests revocation of the debtor's discharge pursuant to *11 U.S.C. §727(d)(2) and (3)* in that he [sic] has *refused to obey a lawful court order* and/or *has acquired property of the estate and has failed to deliver or surrender such property* to the trustee.[5]

Ms. Washington answered this complaint, stating that she had been in possession of the funds before the petition was filed, that during the § 341 meeting the Trustee directed her not to cash her refund checks, but that she had already cashed them. Judge Somers called the matter for trial on March 7, 2006. Ms. Washington did not appear. In her absence, Judge Somers entered judgment for the Trustee and directed Trustee's counsel to prepare the order. Thereafter, he entered an order that stated in pertinent part:

---

[3] Dkt. 27 and 29.

[4] Dkt. 37 and 38.

[5] Adv. No. 05-5855, Dkt. 1 (Emphasis added).

-3-

> 1. The trustee's motion for judgment against defendant Lula B. Washington is GRANTED
> 2. The trustee is granted judgment against Lula B. Washington in the amount of $2,446.88, plus interest accruing at the rate of 10% from the date of filing; court costs of $250.00; and sanctions of $400.00.
> 3. Further, the debtor's discharge is hereby revoked pursuant to 11 U.S.C. §727 in that the *debtor has failed to comply and refused to obey a lawful order of the Court*.[6]

Ms. Washington filed the present chapter 7 bankruptcy case on July 30, 2008. The Trustee filed this adversary proceeding (Adv. No. 08-5239) seeking to except from debtor's discharge the judgment entered in the 2005 adversary proceeding. At the trial on this adversary, Ms. Washington admitted that she did not turnover the tax returns or refunds in her 2004 bankruptcy, nor did she dispute that the Trustee demanded that she do so. She did, however, affirmatively deny that she intended to defraud the Trustee or the estate. The Trustee's evidence consisted of Washington's testimony and copies of the pertinent pleadings in both bankruptcy cases.

The Trustee argues that debtor's conduct in the 2004 bankruptcy amounted to fiduciary defalcation or embezzlement that would except the judgment from discharge under § 523(a)(4) or willful and malicious damage to property of the 2004 estate under § 523(a)(6). The Trustee also asserted that, because debtor's discharge was revoked in the 2004 case, § 523(a)(10) excepts from discharge any debt that could have been discharged in a prior case where the debtor was, as here, denied a discharge. This Court initially concluded that the debtor's debt was such a debt and, therefore, should be excepted from discharge. Upon further review and reflection, however, this conclusion is simply incorrect.

Analysis and Conclusions of Law

To prevail on the § 523(a)(4) claims, the Trustee had to show, by a preponderance of the

---

[6] Adv. No. 05-5855, Dkt. 12 (Emphasis added).

-4-

evidence, that the debtor occupied a fiduciary capacity toward the 2004 estate and that she committed fraud or defalcation while in that capacity.[7] In the alternative, he had to show that she fraudulently appropriated the property of another that came into her hands by lawful means; in other words, that she committed embezzlement.[8] To prevail on the (a)(10) claim, he had to show that the 2005 adversary judgment represented a debt that could have been listed or scheduled in the prior case in which the debtor lost her discharge for failure to follow a valid order.

    A.    Exceptions to Discharge under § 523(a)(4)

        1.    Defalcation While Acting in a Fiduciary Capacity

Nothing in the debtor's testimony or the pleadings demonstrates that the debtor occupied a fiduciary capacity vis-a-vis the estate that was created when she filed her 2004 case. All that the Trustee proved at the 2009 trial was that the debtor received the 2004 tax refund after she filed her 2004 case, that she had cashed her tax refund checks before the January 31, 2005 § 341 meeting, that she knew she was obligated to turn the money over, and that she failed to do so.

The Trustee supplied the Court with no authority suggesting that a debtor has a *fiduciary* duty to her own estate. It is true that all legal and equitable interests of the debtor became property of the estate when she filed.[9] As such, she held property at the 2004 filing date that became property of the estate. Section 542(a) requires any entity holding property of an estate to turn it over to the

---

[7] *Fowler Bros. v. Young*, 91 F.3d 1367, 1371-72 (10th Cir. 1996) (addressing the fiduciary relationship requirement for § 523(a)(4)); *In re Parker*, 264 B.R. 685, 700 (10th Cir. BAP 2001), *aff'd* 313 F.3d 1267 (10th Cir. 2002), *cert. denied Watson v. Parker*, 540 U.S. 965 (2003) (discussing defalcation while acting in a fiduciary capacity).

[8] *Cousatte v. Lucas,* 300 B.R. 526, 531 (10th Cir. BAP 2003); *In re Putvin*, 332 B.R. 619, 627 (10th Cir. BAP 2005).

[9] § 541(a)(1).

-5-

trustee. An "entity" is defined in § 101(15) as, among other things, a "person." A person, in turn, is defined inter alia as an individual. § 101(41). A "debtor" is a "person" under § 101(13) and, accordingly is an "entity."

There is no doubt that debtor had a statutory duty to turn over the property, but the mere existence of a duty is not enough to support a fiduciary defalcation claim.[10] A fiduciary duty must be an express or technical trust that is imposed by law and arises by statute.[11] Here, the 2004 tax refunds were never "entrusted" to debtor in the sense that the refunds were placed in debtor's hands for the expressed purpose of her holding them for another. Instead, debtor filed her 2004 returns and received the refunds from the taxing authorities. There is simply no indication that she received these funds "in trust" for the estate. The Court finds no legal authority for the proposition that the turnover duty in § 542 rises to the special dignity of an express or technical trust.[12] Even if it did, there is no evidence that debtor defrauded or intended to defraud the estate. Judge Somers had an opportunity to find that Washington committed fraud in the prior adversary and he did not. This Court notes that the Trustee expressly prayed for findings under § 727(d)(2) and (3) in the 2005 adversary. Subsection (d)(2) revokes a debtor's discharge where it is shown that the debtor acquired property of the estate and knowingly and fraudulently failed to report its acquisition or to deliver it to the trustee. Subsection (d)(3) imports the "failure to obey a lawful order" provision of §

---

[10] *See* § 542(a) and § 521(a)(4).

[11] *Fowler Bros. v. Young*, 91 F.3d 1367 (10th Cir. 1996).

[12] The Court observes that the Code and bankruptcy rules with respect to a debtor's "duties" are silent when it comes to either imposing an express or statutory trust or creating a *fiduciary* duty upon the debtor. There is no language in either the rules or the Code from which the Court can conclude that the debtor holds such property of the estate as a fiduciary or "in trust" for the estate or case trustee. *See* § 521 and Fed. R. Bankr. P. 4002.

-6-

727(a)(6). In the Order entering judgment in the 2005 adversary, the bankruptcy court revoked debtor's discharge because "*debtor has failed to comply and refused to obey a lawful order of the Court*," and made no finding concerning fraudulent conduct of any kind. Thus, the 2005 adversary judgment is not res judicata that Washington committed fraud in 2005. This Court can find no basis to except the 2005 adversary judgment from debtor's discharge for fiduciary fraud or defalcation.

        2.        Embezzlement

Likewise, there is no basis to conclude that debtor embezzled the funds. To succeed on that claim, the Trustee needed to show that the debtor came into the funds lawfully, but fraudulently appropriated them from the estate. As noted above, the 2005 adversary judgment (entered as drafted by the Trustee) omits any reference whatever to any fraud on the part of the debtor in 2005. Thus, evidence of fraud was required at the 2009 trial. In order to sustain an embezzlement exception to discharge, the Trustee must show fraud in fact, involving moral turpitude or intentional wrong, rather than implied or constructive fraud.[13] The record simply does not support that here.

    B.        Exception to Discharge under § 523(a)(6): Willful and Malicious Injury

While Ms. Washington obviously came into possession of these funds after her 2004 case was filed and violated her duty to turn them over to the Trustee, there is nothing in the record that supports a finding of malice. To except a debt from discharge under § 523(a)(6), the claimant must demonstrate not only that the debtor's actions were intentional, but also that the debtor intended to harm the creditor by her actions.[14] Intentional torts generally require that the actor intend "the

---

[13] *Cousatte*, *supra* at 531.

[14] *Parker,* 264 B.R. at 700, *citing Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed. 2d 90 (1988) (requiring a deliberate or intentional injury to a creditor or creditor's property); *Panalis v. Moore*, 357 F.3d 1125 (10th Cir. 2004).

-7-

Case 08-05239   Doc# 22   Filed 07/06/09   Page 7 of 11

consequence of an act" not simply the act itself.[15] Here, there is no evidence pointing to Washington's malicious intent toward the estate or the Trustee. The evidence is that Ms. Washington secured her 2004 tax refund in early 2005, sometime before she appeared for her first meeting and before the Trustee orally instructed her not to spend the money. The record also indicates that she did not respond to the Trustee's request for information or the Court's turnover order. Those facts alone do not support a finding that Ms. Washington intended the consequences of her action. She did not intend to damage the bankruptcy estate.

    C.    <u>Exception to Discharge Under § 523(a)(10)</u>

Finally, it is now apparent to this Court that the judgment entered after the commencement of the 2004 case cannot represent a debt that could have been listed in the 2004 case wherein the debtor's discharge was revoked. Section 523(a)(10) provides:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt – . . .
> (10) *that was or could have been listed or scheduled by the debtor in a prior case concerning the debtor under this title* . . . in which the debtor waived discharge, or was denied a discharge under section 727(a)(2), (3), (4), (5), (6), or (7) of this title . . .[16]

Here, debtor's obligation to turnover the funds to the estate did not arise until the filing of the case and the creation, by operation of law, of the 2004 case's estate. A "debt" is a liability on a claim.[17] A "claim" is a right to payment.[18] Under § 502, a claim is allowed as of the date of the petition. As of the date of the 2004 petition, there was no estate, no trustee, and no claim. Only once the petition

---

[15] *Geiger, supra.*

[16] Emphasis added.

[17] § 101(12).

[18] § 101(5).

-8-

was filed was a trustee appointed and did the § 542 turnover obligation arise.  The judgment in the 2005 adversary was entered long after the 2004 bankruptcy was filed.  Thus, the judgment was not a debt *that was or could have been listed or scheduled by the debtor* in the 2004 case and can not be excepted from discharge in this case under § 523(a)(10).

In the Trustee's brief submitted pursuant to the Court's direction to provide legal authority for the § 523(a)(4) fiduciary defalcation claim, the Trustee devotes the majority of his brief to the § 523(a)(10) claim and attempts to persuade the Court of its application in the case at bar.[19]  The Court is not convinced.  While the Court does not take issue with the *res judicata* effect of a nondischargeability determination in a prior case, the Trustee misapprehends the reach of § 523(a)(10).  It applies to the "same debts" in successive bankruptcies.  As noted in *In re Basford*, cited by the Trustee:

> In their present bankruptcy case, the Defendants seek to discharge several *of the same debts from their prior Chapter 7 case* in which their discharge was denied. With respect to these debts, the Plaintiff/Trustee appointed to the present case brought the instant action, seeking a determination of nondischargeability under 11 U.S.C. § 523(a)(10).  This section generally "excepts from discharge *debts that the debtor owed before a prior bankruptcy case of the debtor* in which the debtor waived or was denied a discharge." [citing Collier on Bankruptcy][20]

The operation of § 523(a)(10) is succinctly stated and applied in *In re Webb*, another bankruptcy case from the Northern District of Ohio that was cited in *Basford*.[21]  In *Webb*, the debtor incurred a $3,000 debt in 1982.  Debtor filed his first chapter 7 case in 1983, but omitted the debt from his schedules.  In 1991, debtor filed another chapter 7 case and this time, listed the $3,000 debt on the

---

[19] Dkt. 20.

[20] *In re Basford*, 363 B.R. 832, 833 (Bankr. N.D. Ohio 2006), emphasis added.

[21] 157 B.R. 614 (Bankr. N.D. Ohio 1993).

-9-

schedules. The creditor on the $3,000 debt filed a complaint to determine dischargeability under § 523(a)(10). The bankruptcy court addressed § 523(a)(10):

> Section 523(a)(10) excepts from discharge debts that the debtor owed *before a prior bankruptcy case* in which the debtor waived or was denied a discharge other than on the basis of the six-year bar. COLLIER ON BANKRUPTCY § 523.19 (Lawrence P. King ed., 15th ed. 1993). The exception of section 523(a)(10) is applicable in circumstances *where debts existing at the commencement of a case* in which the debtor waives or is denied discharge can never be discharged in a subsequent bankruptcy. . . . A determination of nondischargeability in one bankruptcy case has a *res judicata* effect *on the same debt in a subsequent case.*[22]

Because the debtor in *Webb* was granted a discharge in the first bankruptcy case, § 523(a)(10) was inapplicable and summary judgment was denied. Other cases cited by the Trustee are distinguishable on their facts from the case at bar or simply do not support the Trustee's reliance on § 523(a)(10).[23]

Here, as noted previously by the Court, the judgment from the 2005 adversary was not a debt that existed at the commencement of Ms. Washington's 2004 bankruptcy case.[24] Therefore, it is not the "same debt" and it could not have been discharged when the bankruptcy court revoked her discharge in the earlier 2004 bankruptcy. Under these circumstances, § 523(a)(10) does not operate

---

[22] *Id.* at 616 (Emphasis added).

[23] *See In re Saler*, 205 B.R. 737, 742 (Bankr. E.D. Pa. 1997) (undisputed that creditor held a pre-petition claim and settled nondischargeability litigation in the debtor's first bankruptcy case); *In re Crasper*, 142 B.R. 396 (Bankr. D. Idaho 1992) (default judgment entered against debtor in prior chapter 7 case denying him discharge was res judicata in subsequent chapter 7 case *as to all debts scheduled in prior case, but was not res judicata as to debts not listed in prior case.*); *In re Boerger*, 67 B.R. 922 (Bankr. W.D. Mo. 1986) (1977 final judgment of nondischargeability of debt obtained by false pretenses was res judicata as to attempt to discharge *same debt* in 1986).

[24] *See also,* Hon. William L. Norton, Jr. and William L. Norton III, 3 NORTON BANKRUPTCY LAW AND PRACTICE § 57:56 (3d ed 2008) ("[D]ebts existing at the commencement of a case in which the debtor is denied discharge can never be discharged in a subsequent bankruptcy.")

-10-

Case 08-05239   Doc# 22   Filed 07/06/09   Page 10 of 11

to except the 2005 adversary judgment from debtor's discharge in this bankruptcy case.

Conclusion

Even though the debtor did not pay the Trustee the estate's portion of the 2004 refund and had her discharge revoked in the earlier case, her debt to the Trustee arising from the 2005 adversary proceeding must be discharged in this case. The Code requires that result, particularly in the absence of any findings in the previous case or adversary concerning the debtor's alleged fraud, despite the fact that the Trustee prayed for them. On the current record, the Court cannot find that the debtor (1) occupied a fiduciary relationship with the estate or the Trustee; (2) committed an act that amounted to fraud or embezzlement; or (3) that the debtor harbored the requisite intent to willfully and maliciously damage the estate's property. Judgment should be entered for the debtor, each party to bear their costs. A Judgment on Decision will issue today.

# # #